UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SOUTH GRANDE VIEW DEVELOPMENT COMPANY, INC., | } } } } |
| Plaintiff, | } } |
| v. | } Case No.: 2:13-cv-02183-MHH } |
| THE CITY OF ALABASTER, | } } |
| Defendant. | } |

# MEMORANDUM OPINION AND ORDER

Before the Court are cross-motions for summary judgment relating to plaintiff South Grande View Development Company, Inc.'s claim against the City of Alabaster for unlawful regulatory taking in violation of the Fifth Amendment to the United States Constitution. (Docs. 46, 48).[1] For the reasons stated below, the Court denies the motions for summary judgment.

## I. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To demonstrate that there is a genuine

---

[1] The Court has already dismissed South Grande View's claims for denial of substantive and procedural due process. (Docs. 21, 28; *see* Doc. 1, pp. 5–7).

dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). When considering a summary judgment motion, the Court must view the evidence in the record in the light most favorable to the non-moving party and draw reasonable inferences in favor of the non-moving party. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015).

"In practice, cross motions for summary judgment may be probative of the nonexistence of a factual dispute, but this procedural posture does not automatically empower the court to dispense with the determination whether questions of material fact exist." *Ga. State Conference of NAACP v. Fayette Cty. Bd. of Comm'rs*, 775 F.3d 1336, 1345 (11th Cir. 2015) (quoting *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983)) (internal quotation marks and brackets omitted). "If both parties proceed on the same legal theory and rely on the same material facts . . . the case is ripe for summary judgment." *NAACP*, 775 F.3d at 1345 (quoting *Shook v. United*

*States*, 713 F.2d 662, 665 (11th Cir. 1983)) (internal quotation marks omitted) (alteration supplied by *NAACP*).

## II.   BACKGROUND

South Grande View Development Company, Inc.—SGV in this opinion— is a real estate development company. (Doc. 46, p. 2). In 1994, SGV bought approximately 140 acres of land in the City of Alabaster for $1.65 million. (Doc. 46, p. 3; Doc. 49, p. 3). When SGV purchased the land, the portion of the land at issue in this lawsuit was zoned for a mixture of single-family residences ("R-2"), garden homes ("R-4"), and townhomes ("R-7"). (Doc. 46, p. 4; Doc. 49, p. 3). Lots zoned R-2 must be 15,000 square feet, and lots zoned R-4 must be 7,000 square feet. (Doc. 47-1, p. 16). With the exception of the portions of SGV's property that were zoned R-2 when SGV purchased the land, SGV intended to develop the land for R-4 lots. (Doc. 46-13, pp. 35–36; Doc. 46, p. 4 n. 4).

Between 2005 and 2007, SGV spent approximately $3.5 million clearing and grading the property for the development of R-4 lots. (Doc. 46, pp. 3, 6–7; *see* Doc. 49, p. 3). The parties dispute whether the grading that SGV performed for the development of R-4 lots could also support R-2 lots. (Doc. 56, p. 3; Doc. 57, p. 9). SGV intended to sell the R-4 lots for approximately $35,000.00 each. (Doc. 46, p. 7; Doc. 46-14, p. 18). On December 5, 2011, the city re-zoned SGV's property for R-2 lots only. (Doc. 46, p. 11; Doc. 49, p. 4). SGV's owner, Concetta Givianpour,

3

testified that the property is not topographically suitable for a residential development of R-2 lots and that, even if it were, there is no market for R-2 lots in Alabaster. (*See* Doc. 46-13, pp. 32–33; Doc. 46-14, pp. 2–3). As a result, SGV contends that the re-zoning constitutes a taking under the Fifth Amendment for which the City of Alabaster must compensate SGV.

## III. DISCUSSION

The Fifth Amendment prohibits the federal government from taking private property "for public use, without just compensation." U.S. CONST. amend. V. States are subject to the same prohibition by virtue of the Fourteenth Amendment. *See Busse v. Lee Cty., Fla.*, 317 Fed. Appx. 968, 971 (11th Cir. 2009). In addition to outright takings of private property, a land regulation that goes "too far" may violate the Fifth Amendment as a regulatory taking. *See, e.g.*, *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922) ("[W]hile property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking.").

Regulations that cause permanent physical invasions or completely destroy a property's economic value are *per se* takings, requiring just compensation. *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1016 (1992) (a taking occurs when a "regulation denies all economically beneficial or productive use of land"); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435–40 (1982) (holding that permanent, physical invasions of land constitute takings); *see also*

4

*Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 538 (2005) (discussing the two categories of *per se* takings). For other land-use regulations, the Supreme Court has prescribed a collection of *ad hoc* factors that lower courts must evaluate to determine if a regulation constitutes a taking. *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). "The *Penn Central* factors . . . have served as the principal guidelines for resolving regulatory takings claims[.]" *Lingle*, 544 U.S. at 539.

The *Penn Central* factors require courts to analyze primarily "[t]he economic impact of the regulation on the claimant, . . . the extent to which the regulation has interfered with distinct investment-backed expectations[, and] the character of the governmental action." *Penn Central*, 438 U.S. at 124; *see also M & N Materials, Inc. v. Town of Gurley, Ala.*, 2014 WL 2590473 (N.D. Ala. June 10, 2014) (denying the town's motion to dismiss because the plaintiff asserted a valid claim under the *Penn Central* framework).

SGV concedes that no taking has occurred under *Lucas* because SGV retained some economically beneficial use of its land after the city's re-zoning. (Doc. 56, pp. 4–5).[2] Thus, for SGV's takings claim to survive the city's motion for summary judgment, the record must reveal a genuine dispute of material fact

---

[2] It is also undisputed that no taking has occurred under *Loretto* because the city has not physically invaded SGV's property. *See* pp. 4–5, above.

regarding whether a taking has occurred under *Penn Central*. The Court finds such a dispute in the record.

SGV has presented evidence that the re-zoning had a detrimental economic impact on its property. Ms. Givianpour testified that the re-zoning rendered the property valueless because, although she could spend money to develop the property to conform to the new zoning, "no one [would] buy it." (Doc. 46-14, pp. 2–3; *see also* Doc. 46-13, pp. 31–34). SGV also has presented evidence that it spent money clearing and grading the property in anticipation of the development of 7,000-square-foot, R-4 lots. SGV expected to sell the R-4 lots for approximately $35,000 each. (Doc. 46-14, p. 18; Doc. 56, p. 6). After the re-zoning, the lots must be 15,000 square feet. (*See* Doc. 47-1, p. 16). Even if, as the city contends, SGV could have developed 15,000-square-foot lots without re-grading the property, SGV would have had to raise the price per lot to $90,000 to reflect the increased size. (Doc. 46-14, p. 3; *see* Doc. 57, p. 9). Ms. Givianpour testified that there was no market for $90,000, 15,000-square-foot lots in Alabaster. (*See* Doc. 46-14, pp. 2–3, 25–26, 29; Doc. 57, pp. 12–13).

The record contains evidence that contradicts Ms. Givianpour's testimony that the re-zoning significantly interfered with SGV's investment-backed expectations in the property. Former Alabaster city councilman and Planning and Zoning Board member Tommy Ryals testified that the work SGV performed in

grading the property for R-4 lots "would still be usable and easily converted to an R-2 classification." (Doc. 46-11, pp. 25–26). Former Alabaster city planner Harry Still testified that R-4 and R-7 zoning were inconsistent with the established developments surrounding SGV's property. (Doc. 47-6, pp. 17–18). Mr. Still's testimony suggests that a market exists in Alabaster for R-2 lots.

The city argues that the Court should enter judgment in its favor because SGV's evidence is not sufficient to create a genuine dispute of material fact regarding the economic impact of the re-zoning on SGV and the extent to which the re-zoning interfered with SGV's reasonable investment-backed expectations in its property. According to the city, SGV's position suffers from a "complete lack of evidence" because SGV relies on Ms. Givianpour's testimony with respect to its contentions that the property is topographically and demographically ill-suited to R-2 lots. (Doc. 57, p. 12; *see* Doc. 46-13, pp. 32–34). The city contends that, in the absence of "actual engineering evidence" and "any type of marketing analysis," SGV's *Penn Central* argument fails. (Doc. 57, pp. 12–13).

Neither party has presented expert evidence in this case in support of its motion for summary judgment.[3] The fact witness testimony conflicts and creates a question of fact for the jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the

---

[3] The record does not indicate that SGV has designated Mr. Ryals or Mr. Still as experts in this case.

drawing of legitimate inferences from the facts are jury functions, not those of a judge."). At the summary judgment stage, Ms. Givianpour's testimony is sufficient to create a factual dispute regarding the economic impact of the re-zoning on SGV and the extent to which the re-zoning interfered with SGV's reasonable investment-backed expectations in its property. Therefore, the Court declines to determine as a matter of law whether the re-zoning constitutes a taking under the Fifth Amendment; that is a question of fact for a jury.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** the parties' motions for summary judgment. (Docs. 46, 48). The Court **SETS** SGV's Fifth Amendment takings claim for a pretrial conference on Tuesday, September 20, 2017 at 10:00 a.m. in chambers of the undersigned, Room 786, Hugo L. Black United States Courthouse, 1729 5th Avenue North, Birmingham, AL 35203. The Court SETS the case for trial on October 16, 2017.

       **DONE** and **ORDERED** this August 28, 2017.

                                   _/s/ Madeline H. Haikala_
                              **MADELINE HUGHES HAIKALA**
                              UNITED STATES DISTRICT JUDGE